## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **JESSE SANDLIN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 2:19-cv-02368-JTF-atc** |
| **CITIMORTGAGE, INC., CENLAR,** | ) | |
| **RICHARD KELLER, J. MATTHEW** | ) | |
| **KROPLIN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Before the Court by order of reference[1] is the Motion to Dismiss of Defendants

CitiMortgage, Inc. ("CitiMortgage"), Cenlar FSB ("Cenlar"), Richard Keller, and Matthew

Kroplin (collectively "Defendants"), filed June 26, 2019.  (ECF No. 9.)  *Pro se* Plaintiff Jesse

Sandlin filed his response on November 8, 2019.  (ECF No. 15.)  Defendants filed their reply  on

November 22, 2019.  (ECF No. 16.)  On June 2, 2020, the Court granted Sandlin's Motion for

Leave to File Sur-Reply (ECF No. 18), which included the sur-reply (ECF No. 18-1).  (ECF No.

21.)[2]  For the following reasons, it is recommended that the Motion be granted in its entirety.

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States
Magistrate Judge for management and for all pretrial matters for determination or report and
recommendation, as appropriate.
[2] The Court provided Sandlin seven days in which to separately file his sur-reply on the docket.
Though Sandlin did not do so, the Court will nevertheless consider it, as filed at ECF No. 18-1.

## PROPOSED FINDINGS OF FACT

Sandlin and CitiMortgage are no strangers to litigation.  This is the fourth lawsuit Sandlin has filed against the corporation in the state, district, and bankruptcy courts in this district.  *See Sandlin v. CitiMortgage, Inc.*, 2:09-cv-02294-JPM-cgc (W.D. Tenn.) ("*Sandlin I*"); *Sandlin v. CitiMortgage, Inc.*, No. 2:14-cv-02513-STA-dkv, 2014 WL 7272402 (W.D. Tenn. Dec. 18, 2014), *aff'g* Adv. Proc. No. 13-00439 (Bankr. W.D. Tenn. May 5, 2014)) ("*Sandlin II*"); *Sandlin v. Citibank, N.A.*, No. 2:15-cv-02768-JTF-dkv, 2018 WL 2370769 (W.D. Tenn. Mar. 26, 2018), *aff'd*, No. 18-5452 (6th Cir. Nov. 20, 2018) ("*Sandlin III*").  Sandlin filed the instant lawsuit on May 31, 2019 (the "Complaint").  (ECF No.  1-2.)[3]

This case involves a mortgage dispute between Sandlin and CitiMortgage wherein Sandlin claims that CitiMortgage improperly foreclosed on his property at 4743 Kassel Cove in Memphis, Tennessee.  (*See generally* Compl.)  In December 2000, Plaintiff purchased the property for approximately $132,000, with a loan backed by the U.S. Department of Veterans Affairs and the Federal Housing Administration.  (*Id.* ¶ 15.)  Though the record is not clear as to the timing, at some point, CitiMortgage became the servicer of the loan.

As the Court explained in *Sandlin III*, "[a]fter Plaintiff allegedly fell behind on his mortgage payments in 2007, CitiMortgage instituted foreclosure sale proceedings for May 2009.  After bringing a number of suits and claims in bankruptcy court and this Court, the parties settled their disputes" in 2012 (*Sandlin I*).  2018 WL 2370769, at *1 (citations omitted).  That settlement ultimately culminated "in a settlement agreement that modified Sandlin's mortgage loan agreement.  Among other things, the settlement agreement provided that Sandlin would have a

---

[3] Sandlin filed this suit in the Circuit Court of Shelby County, Tennessee.  (*Id.*)  Defendants removed the case to this Court on June 6, 2019.  (ECF No. 1-1.)

non-escrow loan[4] and would be responsible for paying local property taxes on his house."

*Sandlin III*, No. 18-5452, at 2 (citations omitted).

Though Sandlin made the mortgage payments as they came due, he failed to pay county property taxes in 2012 or city and county property taxes in 2013. *Sandlin III*, 2018 WL 2370769, at *2 (citations omitted). This triggered the 2014 litigation known as *Sandlin II*:

> After Sandlin failed to pay all of his local property taxes in 2012 and 2013, CitiMortgage transitioned his loan to include escrow and increased his monthly payment amount to account for funds it had applied to cover Sandlin's tax bill. In response, Sandlin filed an adversary proceeding in the bankruptcy court, challenging CitiMortgage's increase of his mortgage payment and its application of his payments to the delinquent tax bills. . . . The bankruptcy court . . . conclud[ed] that Sandlin failed to pay his local taxes and that CitiMortgage properly exercised its contractual right under the modified loan agreement to pay the delinquent taxes and seek repayment. Sandlin appealed to the district court, which affirmed the bankruptcy court's decision.

*Sandlin III*, No. 18-5452, at 2 (citations omitted).

"Throughout October 2013 to September 2014, Plaintiff failed to tender the amounts due under the loan on a number of occasions." *Sandlin III*, 2018 WL 2370769, at *2. "As a result of making only partial payments, Plaintiff fell behind on his mortgage and entered default." *Id.* "CitiMortgage initiated foreclosure proceedings against him and scheduled a foreclosure sale. Before the sale took place, Sandlin sued CitiMortgage . . . in state court, alleging breach of contract, slander of title, violation of the Tennessee Consumer Protection Act (TCPA), fraudulent misrepresentation, and intentional infliction of emotional distress." *Sandlin III*, No. 18-5452, at 2.[5] That action, *Sandlin III*, was removed to this Court, and the 2015 foreclosure

---

[4] As part of the modified loan agreement, Sandlin was to pay CitiMortgage "principal and interest only, as Plaintiff was responsible for the payment of local property taxes and insurance on the home, eliminating the need for an escrow account." *Sandlin III*, 2018 WL 2370769, at *1 (citations omitted).
[5] Sandlin filed an amended complaint on December 21, 2016. No. 2:15-cv-02768-JTF-dkv, ECF No. 36.

sale was cancelled.  2018 WL 2370769, at *2 (citation omitted).  Defendants Keller and Kroplin are attorneys who represented CitiMortgage in *Sandlin III*.  (Compl. ¶¶ 39–45; Memo. of Law in Support of Defs.' Mot. to Dismiss ("MTD"), at 3.)

In *Sandlin III*, the Court first dismissed some of Sandlin's claims and ultimately granted a defense motion for summary judgment on the rest.  No. 18-5452, at 3.  The Sixth Circuit affirmed all those rulings in 2018.  *See generally id.*  Importantly, the Sixth Circuit held that "the record establishes that Sandlin defaulted on his loan."  *Id.* at 6.  As this Court found, "Plaintiff defaulted on his loan.  As a result, Defendants were entitled to institute foreclosure proceedings." 2018 WL 2370769, at *7 (citation omitted).

The instant lawsuit arises from efforts to recommence those foreclosure proceedings.  As alleged by Sandlin in the Complaint, Cenlar became the servicer of the loan on April 1, 2019. (Compl. ¶ 17.)  Sandlin alleges that, on April 12, 2019, Cenlar mailed him a loan statement indicating he had an outstanding principal of $134,666.61, a -$8,030.94 escrow balance, and an amount due of $39,422.50; that he was 1,472 days delinquent on his mortgage; and that $24,291.82 in credit had not been applied to his account.  (*Id.* ¶ 18.)  Sandlin subsequently spoke with several representatives from Cenlar before one ultimately told him that a foreclosure sale date was set for June 3, 2019.  (*Id.* ¶ 26.)  Cenlar then published four foreclosure notices claiming that Sandlin was in default of his mortgage and informed other third parties, including credit bureaus, of the default.  (*Id.* ¶¶ 28, 32.)  Sandlin alleges that he had continued making mortgage payments and was not in default on the loan.  (*Id.* ¶¶ 31, 33–35.)  Sandlin alleges that CitiMortgage and Cenlar failed to comply with federal regulations incorporated in the Deed of Trust.  (*Id.* ¶¶ 36–37.)  Sandlin also asserts that Keller and Kroplin engaged in constructive fraud

based on their court filings and representations to the court made on CitiMortgage's behalf in the earlier litigation. (*Id.* ¶¶ 39–45.)

Sandlin's Complaint seeks relief on ten separate grounds: (i) declaratory and injunctive relief; (ii) violation of the Fair Debt Collection Practices Act; (iii) negligence; (iv) unjust enrichment; (v) violation of the Tennessee Consumer Protection Act ("TCPA"); (vi) wrongful foreclosure; (vii) wantonness; (viii) slander of title; (ix) breach of contract; and (x) intentional infliction of emotion distress. (*See id.* ¶¶ 46–105.)

The Motion states three grounds for dismissing the Complaint's various claims: res judicata, the litigation privilege, and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants assert that, because Plaintiff's claims that he was not in default and that Defendants had no right to foreclose have been previously rejected, they are barred by the doctrine of res judicata. (MTD 10.) Defendants further state that all allegations against Keller and Kroplin arise from their actions representing CitiMortgage and are absolutely barred by Tennessee's litigation privilege. (*Id.* at 10–11.) Finally, Defendants assert that the substantive counts fail to state claims for which relief may be granted. (*Id.* at 14–29.)

## PROPOSED CONCLUSIONS OF LAW

### I.    Jurisdiction

As a threshold matter, this Court must determine whether jurisdiction is proper before it. Defendants removed the case to this Court based on its federal question jurisdiction, 28 U.S.C. § 1331, as Plaintiff invokes the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"). Defendants also assert that jurisdiction is proper under 28 U.S.C. § 1332, based on the parties' complete diversity and the amount in controversy exceeding $75,000. Though Sandlin and Kroplin are both residents of Tennessee, Defendants assert jurisdiction is

nevertheless proper under § 1332 because Kroplin was fraudulently joined, arguing that Sandlin

lacks "'at least a colorable cause of action' under state law against" him.  (ECF No. 1, at ¶ 19

(quoting *Garner v. SDH Servs. E., LLC*, 55 F. Supp. 3d 1016, 1021 (M.D. Tenn. 2014).)

Here, the question of fraudulent joinder is immaterial, as the alleged violations of the

FDCPA in Count Two of the Complaint establish that a substantial federal question exists,

making this Court's jurisdiction proper under § 1331.  *See Brown v. Hosto & Buchan, PLLC*, 748

F. Supp. 2d 847, 851 (W.D. Tenn. 2010) ("This Court has original jurisdiction over . . . FDCPA

claims under the express authorization of federal jurisdiction found in 15 U.S.C. § 1692k(d) and

the general federal question jurisdiction conferred by 28 U.S.C. § 1331."); *see also United States*

*v. Goforth*, 465 F.3d 730, 733 (6th Cir. 2006) (finding jurisdiction before the district court proper

"because the action arose under a federal statute, the FDCPA").[6]  The Court's jurisdiction

extends to Sandlin's state-law claims under 28 U.S.C. § 1367, as the claims derive from a

"common nucleus of operative fact."  *Baxter Bailey & Assocs., Inc. v. Powers & Stinson, Inc.*,

No. 2:14-cv-03012-SHM-dkv, 2015 WL 12867931, at *1 (W.D. Tenn. Apr. 8, 2015) (citing 28

U.S.C. § 1367).

---

[6] Even if the Court did not have jurisdiction under § 1331, it would alternatively have
jurisdiction under § 1332.  As explained *infra* Section III, Sandlin's claims against Kroplin, the
only non-diverse Defendant, are not colorable, rendering him fraudulently joined.  "A defendant
is fraudulently joined if it is 'clear that there can be no recovery under the law of the state on the
cause alleged or on the facts in view of the law.'"  *Rhodes v. Bates Rubber, Inc.*, No. 1:19-cv-
01030-STA-jay, 2019 WL 2723237, at *3 (W.D. Tenn. June 27, 2019) (quoting *Casias v. Wal-
Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012)).  "[T]he citizenship of a defendant who has
been fraudulently joined should be disregarded when determining whether a federal court has
diversity jurisdiction."  *Garner*, 55 F. Supp. 3d at 1021.  The other elements of diversity
jurisdiction have also been satisfied.

## II.     Standard of Review

To determine whether Sandlin's Complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The court "construes the complaint in a light most favorable to the plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se*

complaints, "however inartfully pleaded").  Nevertheless, *pro se* litigants "are not exempt from

the requirements of the Federal Rules of Civil Procedure."  *Wright v. Penguin Random House*,

783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372,

376 (6th Cir. 2006)); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A]

court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting

*Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)); *Song v. Gipson*, 423

F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the

strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly

burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a

particular party.  While courts are properly charged with protecting the rights of all who come

before it, that responsibility does not encompass advising litigants as to what legal theories they

should pursue.").

## III.    The Litigation Privilege Bars Plaintiff's Claims Against Keller and Kroplin.

Tennessee's litigation privilege serves as an absolute bar to Sandlin's claims against

Keller and Kroplin.  Tennessee's litigation privilege

> protects an attorney and immunizes him from suit when the following factors are
> present: (1) the attorney was acting in the capacity of counsel for a client or
> identifiable prospective client when the conduct occurred, (2) the attorney was
> acting in good faith for the benefit of and on behalf of the client or prospective
> client, not for the attorney's self-interest, (3) the conduct was related to the
> subject matter of active litigation or proposed litigation that was under serious
> consideration by the attorney, and (4) there was a real nexus between the
> attorney's conduct and that litigation.

*Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, No. 2:13-cv-02328-JDT-

dkv, 2013 WL 3992523, at *10 (W.D. Tenn. Aug. 5, 2013) (citing *Unarco Material Handling,*

*Inc. v. Liberato*, 317 S.W.3d 227, 238 (Tenn. Ct. App. 2010)).  The litigation privilege is

absolute.  *Id.* (citing *Unarco*, 317 S.W.3d at 238).

Each of the acts that appear to form the basis for Sandlin's claims against Keller and Kroplin were made by the lawyers as part of their representation of CitiMortgage. Sandlin attributes the following specific actions to the attorneys:

- Provided "deceptive, and misleading representation" to CitiMortgage. (Compl. ¶ 39.)
- "[F]iled pleadings in a court and misrepresented to that court Plaintiff was not current on his mortgage, when in fact he was." (*Id.* ¶ 40.)
- "[A]lmost entirely 'copy and pasted' the language from a prior pleading." (*Id.* ¶ 41.)
- "[C]onstructively concealed and provided false information to give a court context for consideration of the issues raised by the pleading." (*Id.* ¶ 42.)
- "[E]ngaged in constructive fraud or misconduct in the prosecution or defense of a civil proceeding." (*Id.* ¶ 43.)
- "[D]eliberately engaged in constructive fraud through false testimony." (*Id.* ¶ 44.)
- "[A]cted with intent to defraud Plaintiff." (*Id.* ¶ 45.)

The remaining allegations against Keller and Kroplin in the Complaint are references to the Defendants collectively or generally. Sandlin does not address the applicability of the litigation privilege and instead claims that res judicata does not apply to the claims against the attorneys because they were not parties to his previous lawsuits. (ECF No. 15, at 5.)

Each of the *Unarco* factors is satisfied. First, both Keller and Kroplin were acting in the capacity of counsel for CitiMortgage when all the complained-of conduct occurred. Second, none of the actions Sandlin described are alleged to have been made in Keller or Kroplin's self-interests and were instead made on behalf of their client. Third, all of the attorneys' conduct cited in Sandlin's Complaint was related to the litigation involving Sandlin. Fourth, the nexus between Keller and Kroplin's conduct and the litigation is real and apparent from the face of the Complaint. All claims against Keller and Kroplin should be dismissed under application of Tennessee's absolute litigation privilege.

## IV.    Initial Recommendations as to Preclusion

Defendants argue that Sandlin's claims are precluded by the rulings in *Sandlin II* and

*Sandlin III*.  Though Defendants focus on a theory of res judicata, both kinds of preclusion are

relevant to the analysis of this case.[7]

### A.    Claim Preclusion or Res Judicata

"[C]laim preclusion prevents parties from raising issues that could have been raised and

decided in a prior action—even if they were not actually litigated."  *Lucky Brand Dungarees,*

*Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. –, 140 S. Ct. 1589, 1594 (2020).[8]  Parties may not

"relitigat[e] the same 'claim' or 'cause of action,' even if certain issues were not litigated in the

prior action."  *Brownback*, 2021 WL 726222, at *3 n.3; *see also J.Z.G.*, 84 F.3d at 214 ("Claim

preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated

but also to bar them from relitigating issues that *could have been raised* in an earlier action.").

"Suits involve the same claim or cause of action if the later suit arises from the same transaction

---

[7] The term "res judicata" has become ambiguous due its usage as both a synonym for, and a type of, preclusion.  *See, e.g.*, *Brownback v. King*, – U.S. –, 2021 WL 726222, at *3 n.3 (2021) ("The terms res judicata and claim preclusion often are used interchangeably.  But res judicata comprises two distinct doctrines.  The first is issue preclusion, also known as collateral estoppel. . . .  The second doctrine is claim preclusion, sometimes itself called res judicata."  (quotations and citations omitted)); *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) (describing "true res judicata" as one of the two doctrines of res judicata).  As used herein, res judicata refers only to claim preclusion, distinct from the doctrine of issue preclusion/collateral estoppel.

[8] "The preclusive effect of a federal-court judgment is determined by federal common law.  This rule applies regardless of whether the prior federal-court judgment was based on federal question or diversity jurisdiction."  *Merial, Inc. v. Sergeant's Pet Care Prods., Inc.*, 806 F. App'x 398, 405 (6th Cir. 2020) (quotations and citations omitted).  The Sixth Circuit also has held that the "scope and effect of a district court judgment in a diversity action is to be determined by federal, not state, law."  *Silcox v. United Trucking Serv., Inc.*, 687 F.2d 848, 852 (6th Cir. 1982).  *Sandlin I*, *Sandlin II*, and *Sandlin III* were all brought to federal court based on diversity jurisdiction or federal question jurisdiction or both, and all concluded with judgments by federal courts.  Therefore the preclusive effect of those rulings is a matter governed by federal law.

or involves a common nucleus of operative facts." *Brownback*, 2021 WL 726222, at \*3 n.3 (internal quotations omitted).

In the Sixth Circuit, claim preclusion is applicable if four elements are satisfied: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 (6th Cir. 2019), *reh'g denied* (June 20, 2019), (quoting *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002)).

The first two elements of claim preclusion are universally satisfied in this case. First, both *Sandlin II* and *Sandlin III* involve final decisions on the merits by courts of competent jurisdiction. In *Sandlin II*, this Court affirmed the United States Bankruptcy Court for the Western District of Tennessee's order granting summary judgment to CitiMortgage. 2014 WL 7272402. Sandlin did not appeal that decision, and the window in which to do so has long since closed. *See* Fed. R. App. P. 4(a)(1)(A) (requiring a notice of appeal to be filed within thirty days after entry of the judgment).

In *Sandlin III*, the District Court first adopted the magistrate judge's report and recommendation to dismiss the claims for slander of title, violation of the TCPA, and infliction of emotional distress. 2016 WL 4292318. The District Court then adopted another report and recommendation and dismissed Sandlin's claims under the FDCPA and for defamation. 2017 WL 1378402. The District Court ultimately granted summary judgment on the remaining claims. 2018 WL 2370769. On November 20, 2018, the Sixth Circuit Court of Appeals affirmed all of those rulings. *See* No. 18-5452.

These rulings in *Sandlin II* and *Sandlin III* constitute final decisions on the merits for purposes of res judicata. *See, e.g.*, *Balee v. City of Memphis*, No. 2:06-cv-02062-SHM-tmp, 2007 WL 9706170, at *10 (W.D. Tenn. June 1, 2007) ("Summary judgment motions under Rule 56 establish both claim and issue preclusion.") (citations omitted). The first requirement of res judicata is therefore satisfied.

Second, each of the parties in this action were either parties to the previous actions or their privies. Sandlin and CitiMortgage were parties to both *Sandlin II* and *Sandlin III*. Though the remaining Defendants were not, they are nonetheless in privity with CitiMortgage.

In evaluating claim preclusion, "privity . . . means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003) (citing *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992)). Sandlin acknowledges that CitiMortgage transferred servicing rights of his mortgage to Cenlar on April 1, 2019. (Compl. ¶ 17.) Cenlar's status as the servicer of the loan renders it in privity with CitiMortgage, as "[m]yriad district courts agree that a mortgage's loan servicer acts as agent for the mortgagee, thereby satisfying res judicata's privity requirement for suits involving the mortgage." *Kimball v. Orlans Assocs. P.C.*, 651 F. App'x 477, 481 (6th Cir. 2016) (citations omitted); *see also Akins v. U.S. Bank, Nat'l Ass'n*, No. 2:18-cv-02725-SHM-dkv, 2019 WL 1495300, at *5 (W.D. Tenn. Apr. 4, 2019), *motion for relief from judgment denied*, No. 2:18-cv-02725-SHM-dkv, 2019 WL 6878877 (W.D. Tenn. Dec. 17, 2019), (citing *Harris v. Ocwen Loan Servicing, LLC*, No. 17-5399, 2017 WL 8791308, at *3 (6th Cir. Nov. 22, 2017), for the proposition that "current and prior loan servicers are in privity with the mortgage lender for the purposes of res judicata").

Keller and Kroplin, whose involvement in this matter is based on their work as counsel in *Sandlin III*, are also in privity with CitiMortgage.  *See Floch v. JP Morgan Chase Bank, N.A.*, No. 14-cv-02712-STA-tmp, 2015 WL 1279407, at *6 (W.D. Tenn. Mar. 20, 2015) (collecting cases that support the proposition that "all authority the Court has found holds that attorneys are treated as parties or privies for res judicata purposes") (quoting *Zahran v. Frankenmuth Mut. Ins. Co.*, No. 95-2588, 1997 WL 205381, at *3 (7th Cir. Apr. 22, 1997)); *Dillard v. Bank of Am., N.A.*, No. 2:13-cv-02253-JDT-dkv, 2013 WL 4590541, at *7 (W.D. Tenn. Aug. 28, 2013) ("[F]or res judicata purposes, privity exists between a party and its attorneys.").

All parties to this lawsuit were either parties in *Sandlin II* and *Sandlin III* or are in privity with those parties, satisfying this second element of res judicata.

Analysis of the third and fourth res judicata elements is complicated by the long span of time covered by the Complaint.  Some of Sandlin's factual allegations appear to have occurred prior to *Sandlin III*, and some after.  "[W]hen considering whether claims are barred by *res judicata*[,] '[t]he crucial date is the date the complaint was filed.'"  *Reynolds v. Knox Cnty. Gov't*, No. 3:17-cv-79, 2018 WL 5928117, at *5 (E.D. Tenn. Aug. 31, 2018) (quoting *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 445 (6th Cir. 2014)).  Sandlin filed the amended complaint in *Sandlin III* on December 21, 2016.  No. 2:15-cv-02768-JTF-dkv, ECF No. 36.

To the extent any of the factual allegations in the instant Complaint are directed to conduct or events that occurred before December 21, 2016, the remaining elements of res judicata are satisfied.  As to the third element, "[t]o conform with due process requirements, a full and fair opportunity to litigate suffices to demonstrate that a claim was, or could have been, litigated in a prior action."  *Balee*, 2007 WL 9706170, at *9 (citing *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1144 (6th Cir. 1985)).  *Sandlin II* and *Sandlin III* were extensively

13

litigated at multiple levels, with all parties actively participating in the presentation of issues and evidence. Though Sandlin makes vague references to the prior proceedings being procured by false statements or fraud (*see, e.g.*, Compl. ¶¶ 40–44; Resp., at 5–6; Sur-Reply, at 2), he offers no specific allegations regarding any misconduct. Indeed, Sandlin's allegations of fraud appear to have been considered and rejected in the previous rulings themselves. *See Sandlin II*, 2014 WL 7272402, at *6; *Sandlin III*, 2018 WL 2370769, at *6. Sandlin had a full and fair opportunity to litigate *Sandlin II* and *Sandlin III*, and thus any claim arising prior to December 21, 2016, related to this case was or should have been litigated in those prior actions.

As to the fourth element, there is identity of the causes of action in *Sandlin II* and *Sandlin III* and those in the instant case arising prior to December 21, 2016. In determining whether there is identity of causes of action, courts in the Sixth Circuit evaluate whether "the claims arose out of the same transaction or series of transactions, or if the claims arose out of the same core of operative facts." *Trs. of Operating Eng'rs Loc. 324 Pension Fund*, 919 F.3d at 383 (quoting *Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 580 (6th Cir. 2008)). This element is also satisfied if there is an affinity between "the facts creating the right of action and . . . the evidence necessary to sustain each action," with "the evidentiary component looking to whether the same underlying factual evidence could support and establish both claims." *Id.* at 383–84 (internal citations and quotations omitted). "[T]he critical consideration is operative 'factual overlap' between the claims." *Id.* at 384 (citing *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 483 (6th Cir. 2014)).

This lawsuit involves the same foundational transaction—the mortgage on Sandlin's home—that was the subject of *Sandlin II* and *Sandlin III*. To the extent the operative facts in this case occurred before December 21, 2016, there is complete factual overlap between the claims of

14

this case and of the prior actions.  Sandlin has alleged additional, more recent facts in support of some of his claims, rendering the overlap incomplete as to some of those facts.  Of critical importance, however, is the conclusive ruling in *Sandlin III* that Sandlin defaulted on his mortgage loan and that CitiMortgage was entitled to foreclose.  No. 18-5452, at 3; 2018 WL 2370769, at *7.  Any allegations supported by seemingly new facts that, in reality, are based on Sandlin's continued disagreement with that fundamental conclusion are barred by claim preclusion.

In summary, the elements of claim preclusion are fully satisfied as to any claim asserted in the Complaint that arises from pre-*Sandlin III* conduct.  All of Sandlin's claims based on events prior to December 21, 2016, were or could have been litigated and are therefore barred under the doctrine of res judicata.  The viability of Sandlin's claims based on more recent conduct is discussed below.

B.    Issue Preclusion or Collateral Estoppel

Issue preclusion, also referred to as collateral estoppel, "dictates that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation."  *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994).  Issue preclusion applies in the Sixth Circuit under the following circumstances:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Ark. Coals, Inc. v. Lawson*, 739 F.3d 309, 320–21 (6th Cir. 2014) (citation omitted).

As discussed above, both *Sandlin II* and *Sandlin III* involve a final decision on the merits by courts of competent jurisdiction, and both provided Sandlin a full and fair opportunity to litigate the issues raised therein. The third and fourth elements of issue preclusion are therefore satisfied for all issues raised in this case. The other two elements will be discussed as relevant below.

## V. Each of Plaintiff's Claims Is Precluded or Otherwise Without Merit Under Rule 12(b)(6).

Each of Sandlin's claims should be dismissed. Though Sandlin has alleged some new factual conduct that occurred after *Sandlin III*, many of the claims based on that conduct are nonetheless precluded by the prior litigation. And in any event, each count fails to state a claim for which relief may be granted.

### A.    Wrongful Foreclosure

The central theory of Sandlin's Complaint and the basis for many of his other claims is encapsulated in Count Six, Wrongful Foreclosure. Sandlin asserts that Defendants' foreclosure is wrongful because he made all his payments on the loan and therefore the default is fictitious. (Compl. ¶¶ 80–83.) As he argues,

> The critical events that continue[] to trigger litigation was the receipt of letters from the Defendant[]s informing the Plaintiff of pending foreclosure sale of his home, even though Plaintiff[] has tendered his mortgage payment under the Deed of Trust and Note. The Defendant[]s therefore cannot justify their wrongful conduct by now claiming that Plaintiff's claims are barred by res judicata after initiating a non-judicial foreclosure sale on an old default that was previously cured in violation of the Deed of Trust and Note and in violation [of] HUD regulation incorporated into the Deed of Trust.

(ECF No. 15, at 3.)

However, as discussed above, in *Sandlin III*, the Court considered, and rejected, Sandlin's claims that he cured the default. "The record reflects that Plaintiff, though making

payments, defaulted on the loan in October 2013 and has since failed to fully satisfy the outstanding balance on the instant loan. . . .  Thus, unlike Plaintiff contends, Plaintiff has not timely tendered the full amount owed under his loan since October 2013, and accordingly, CitiMortgage, had a right to accelerate the amounts due under the loan."  2018 WL 2370769, at *4.  "The record . . . demonstrates that Plaintiff defaulted on his loan.  As a result, Defendants were entitled to institute foreclosure proceedings."  *Id.* at *7.  The factual basis of Sandlin's current claim of wrongful foreclosure is identical to the facts before the Court in *Sandlin III*, and thus the prior ruling that CitiMortgage is entitled to foreclose bars further litigation of the claim under both res judicata and collateral estoppel.

Sandlin's current claim for wrongful foreclosure is also deficient on its face.  Though "Tennessee courts have not announced 'specific elements for wrongful foreclosure,' . . . the commonality between all reported and non-reported cases alike is the occurrence of an actual foreclosure on property."  *Harris v. LNV Corp.*, No. 3:12-cv-0552, 2014 WL 12530946, at *9 (M.D. Tenn. Jan. 8, 2014).  "Until a foreclosure has occurred, the issue is not ripe for review and the court lacks jurisdiction over it."  *Id.* (citation omitted).

Here, Sandlin acknowledges that a foreclosure has not yet happened and, in fact, the Circuit Court for Shelby County, Tennessee, where this action originated, issued a temporary restraining order preventing Defendants from foreclosing on Sandlin's property.  (ECF No. 1-2, at 26–27.)  Defendants removed the matter to this Court the day before a hearing on the application for temporary restraining order and preliminary injunction.  (*Id.* at 27.)  Because no foreclosure has taken place, the wrongful foreclosure count should be dismissed for failure to state a claim.

B.    FDCPA Violation

In Count Two, Sandlin alleges Defendants violated several provisions of the FDCPA. (Compl. ¶¶ 57–62.)  In *Sandlin III*, the Court dismissed similar claims because the defendants there—CitiMortgage and Citibank—did not qualify as "debt collectors" under the FDCPA, as "the debt was not in default at the time it was obtained by the Defendants . . . mak[ing] them creditors attempting to collect their own accounts."  2017 WL 9470627, at *4.  That issue was fully litigated and necessarily decided in *Sandlin III*, and to the extent the FDCPA count is asserted against CitiMortgage, it is barred by issue preclusion.

But not so as to Cenlar.  Sandlin has alleged that Cenlar assumed servicing rights to the debt on April 1, 2019 (Compl. ¶ 17), and at that point the debt was already in default.  That timing would bring Cenlar outside of the FDCPA's exception for creditors collecting their own debt, as Cenlar acquired a defaulted loan.  *See* 15 U.S.C. § 1692a(6)(F)(iii); *Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 942–43 (S.D. Ohio 2010).  Furthermore, Sandlin's claims against Cenlar arise from Cenlar's alleged conduct in instituting the 2019 foreclosure, facts that were obviously not before the Court in *Sandlin III*.  This precise issue and factual underpinning were not raised in *Sandlin III*, and preclusion does not apply.

Regardless, however, Sandlin fails to state an FDCPA claim for which relief may be granted.[9]  Defendants argue the Complaint lacks facts sufficient to support the alleged FDCPA

---

[9] Defendants argue Sandlin has failed to allege they are a "debt collector" in that they "use an 'instrumentality of interstate commerce or the mails' in operating a business that has the 'principal purpose' of 'collection of debts' or 'enforcement of security interests.'"  (MTD 17 (quoting § 1692a(b); *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. –, 139 S. Ct. 1029, 1037 (2019)).)  On the contrary, Sandlin alleges Cenlar "cause[d] to be mailed to Plaintiff a loan statement" listing the outstanding principal, escrow balance, and amount due on the loan. (Compl. ¶ 18.)  Construed in Sandlin's favor, that allegation is likely sufficient to allege that Cenlar is a debt collector under the FDCPA.

violations, relying only on conclusory allegations that have already been decided against Sandlin. (MTD 18.)  Here, Defendants are correct.  Sandlin asserts a violation of 15 U.S.C. § 1692f, by "using unfair and unconscionable means" to collect a debt, "including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the subject Mortgage and otherwise in violation of law."  (Compl. ¶ 58.)  Nowhere in the Complaint does Sandlin allege debt-collecting means used by Cenlar that could be described as "unfair and unconscionable," nor does Sandlin offer more than this conclusory statement to show that the amounts charged by Cenlar are not authorized by the mortgage or are unlawful.  Similarly, Sandlin asserts a violation of § 1692e(2), "by misrepresenting the character, amount and legal status" of his debt (Compl. ¶ 59), but he makes no allegations that the amounts included on the loan statement are incorrect (*see id.* ¶ 18).  Instead, he merely recounts conversations with various Cenlar employees describing either lack of knowledge about the amounts owed or information about other aspects of the account.  (*See id.* ¶¶ 19–25).  Without any supporting factual allegations, Sandlin has failed to state a plausible claim for relief.

Finally, Sandlin's allegation as to misrepresentation of the legal status of the debt, as well as his allegations under §§ 1692e(5) and 1692f(6) for threatening to foreclose on his home without a right to do so (Compl. ¶ 60), are foreclosed by the unequivocal ruling in *Sandlin III* that the loan was in default and CitiMortgage had a right to accelerate.  2018 WL 2370769, at *6–7.  Because it was already decided in *Sandlin III* that CitiMortgage had a right to foreclose, res judicata bars the same claim against Cenlar as CitiMortgage's privy.  The FDCPA claim should be dismissed in its entirety.

19

C.    Negligence

The gravamen of Sandlin's negligence claim, Count Three, is that Defendants negligently initiated foreclosure on his home, stemming from a negligent handling of his payments and assessing of fees and a negligent failure to properly credit his payments or 2012 property taxes. (Compl. ¶ 64–66.)  He asserts that, "[a]t the time Defendants [CitiMortgage] and Cenlar elected to accelerate the debt and commence foreclosure proceeding[s], [CitiMortgage] and Cenlar knew or should have known that it hadn't applied funds and that Plaintiff always has tendered sums enough to satisfy his obligations under the mortgage."  (*Id.* ¶ 31.)  He further alleges that, "[a]t all relevant times, Plaintiff has tendered amounts necessary to pay the sums owed on his mortgage, however, due to the consistent errors of the Defendants, mortgage payments remain in limbo and are counted against the mortgage, instead of reducing the mortgage."  (*Id.* ¶ 34.)

Sandlin's negligence allegations all appear to arise from facts that were fully litigated in *Sandlin III* and are barred by res judicata.  *See* 2018 WL 2370769, at *6 ("[Sandlin] defaulted on his loan, [CitiMortgage] properly accelerated the loan, and [CitiMortgage] only collected or attempted to collect funds it was entitled to under both the Mortgage and Settlement Agreement.").  Sandlin has not identified any misapplication of funds not covered by that ruling.

Even if Sandlin's negligence claim could not have previously been raised, he fails to state a claim upon which relief could be granted.  Tennessee, which defines negligence as basically "the failure to exercise reasonable care," requires the demonstration of the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."  *Smith v. Marten Transp. Ltd.*, No. 2:19-cv-02135-TLP-dkv, 2020

WL 3485578, at *3 (W.D. Tenn. Mar. 23, 2020) (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)).

The Motion asserts that Sandlin cannot demonstrate Defendants owed him a duty of care or that their behavior fell below the applicable standard. (MTD 19.) Defendants contend that the only duties they owed to Sandlin are those required under the note and mortgage agreement, as "Tennessee does not impose common law duties on its financial institutions with respect to their customers, depositors or borrowers." (*Id.* (citing *Permobil, Inc. v. Am. Express Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008).)

Under Tennessee law, when parties engage in arm's-length transactions, as here, "absent special circumstances, the parties' contractual relationship delineates their obligations to one another, and [defendants] do[] not owe any additional common law duty to [plaintiffs]." *Permobil*, 571 F. Supp. 2d at 842. Without such "special circumstances, Tennessee courts have dismissed negligence claims related to the handling and servicing of mortgage loans." *Howard v. Nationstar Mortg., LLC*, No. 2:16-cv-02831-JTF-dkv, 2017 WL 9807334, at *2 (W.D. Tenn. June 13, 2017). Ultimately, Sandlin has not alleged that there are any special circumstances at issue here that would expand the duties Defendants owed him beyond those found in their contracts. Their relationship does not exist beyond "the context of a debtor-creditor relationship." *Permobil*, 571 F. Supp. 2d at 842 (citing *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006)). The absence of any special circumstances confines the duties Defendants owed Sandlin to those articulated in their contract. As a result, Sandlin's claim for negligence warrants dismissal.

D.    Unjust Enrichment

Sandlin's claim for unjust enrichment, Count Four, is similarly related to claims he

previously brought in *Sandlin III*.  He asserts that Defendants will be unjustly enriched by the

collection of additional default servicing fees, increased fees from the artificially inflated

mortgage balance, insurance proceeds, and the equity in the house, presumably upon its sale.

(Compl. ¶¶ 71–74.)  As the District Court explained in rejecting Sandlin's claim for breach of

contract in *Sandlin III*, "[a] review of the record reveals that all of the funds that Defendants

collected or attempted to collect were, if not explicitly, then implicitly, accounted for by the loan

documents."  2018 WL 2370769, at *5.  The Court concluded that "no reasonable jury could

conclude that Defendants committed a breach of the instant Mortgage Agreement by collecting

or attempting to collect funds it was not entitled to."  *Id.* at *5.

Sandlin's Complaint does not explicitly describe the servicing fees that he contends

would be improperly recoverable by Defendants apart from the profit CitiMortgage allegedly

enjoyed from the forced placement of property insurance on his home starting in 2014, which he

clearly could have challenged in the prior litigation.  (Compl. ¶ 38.)  Moreover, the District Court

explained that, under their contracts, CitiMortgage was entitled to collect the precise sort of fees

at issue here, including "all expenses incurred in pursuing acceleration of the debt"; "borrower

fees for services performed in connection with Borrower's default, for the purpose of protecting

Lender's interest in the Property and rights under this Security Instrument, including, but not

limited to attorneys' fees, property inspection and valuation fees"; and "the charging of any other

fee not expressly prohibited by the Mortgage Agreement between the parties or by applicable

law."  *Sandlin III*, 2018 WL 2370769, at *5 (quotations omitted).  The prior determination that

Defendants did not fail to properly apply Sandlin's payments, from which his unjust enrichment

claim flows, means that his claim based on more recent instances of the same type of payment application is also properly excluded under the doctrine of collateral estoppel.

The unjust enrichment claim should also be dismissed because it fails to state a claim upon which relief granted.  Defendants correctly assert that, just as recovery for negligence is forestalled when the parties have an enforceable, express contract upon which a claim is based, Tennessee law prohibits recovery for unjust enrichment under the same circumstances.  (MTD 20–21.)  In Tennessee, "[u]njust enrichment is a quasi-contractual theory or an equitable substitute for a contract claim in which a court may impose a contractual obligation where one does not exist." *Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, 827 (W.D. Tenn. 2020) (quoting *Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005)).  To succeed on such a claim, "there can be no valid and enforceable contract between the parties." *Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F. Supp. 2d 885, 893 (M.D. Tenn. 2011) (citing *Hayes v. Washburn*, No. M2006-01135-COA-R3-CV, 2007 WL 3202765, at *5 (Tenn. Ct. App. Oct. 31, 2007)).

Sandlin does not (and cannot) dispute that a valid contract exists between him and CitiMortgage and that his claims against it and the other Defendants are derived from that contractual relationship.  As a result, it is recommended that Sandlin's claims for unjust enrichment be dismissed.

    E.    <u>Breach of Contract</u>

In Count Nine, Sandlin asserts that Defendants have failed to apply his payments correctly and brought an action for foreclosure in the absence of a legitimate default, which constitutes a breach of the parties' mortgage agreement.  (Compl. ¶¶ 97, 98.)  As discussed above, the claims and issues regarding default and misapplication of funds have been fully

23

litigated and decided against Sandlin and are thus precluded under res judicata and collateral
estoppel.

Another argument Sandlin appears to raise in support of his claim for breach of contract
is that Defendants violated 24 C.F.R. § 203.604(b)'s mandate that they conduct a face-to-face
interview with him before changing his monthly payments or initiating foreclosure proceedings.
(Compl. ¶¶ 36, 37.)  24 C.F.R. § 203.604(b) provides:

> The mortgagee must have a face-to-face interview with the mortgagor, or make a
> reasonable effort to arrange such a meeting, before three full monthly installments
> due on the mortgage are unpaid.  If default occurs in a repayment plan arranged
> other than during a personal interview, the mortgagee must have a face-to-face
> meeting with the mortgagor, or make a reasonable attempt to arrange such a
> meeting within 30 days after such default and at least 30 days before foreclosure
> is commenced . . . .

By its plain terms, the regulation requires that the face-to-face meeting occur before three
monthly payments are unpaid (or within thirty days after default on a repayment plan).  Sandlin
failed to make three monthly payments from October to December of 2013, *Sandlin III*, 2018
WL 2370769, at *2, and thus this issue was ripe for litigation in *Sandlin III*.[10]  As such, it is now
barred by res judicata.

Sandlin also fails to state a claim for breach of contract.  He alleges that Defendants
failed to apply his payments as required under the mortgage and note.  (Compl. ¶ 97.)  But the
Complaint is bereft of any factual support for his allegations that somehow CitiMortgage should
have applied funds differently.  Sandlin's assertion in his Response that his breach of contract

---

[10] Indeed, Sandlin did raise the issue in *Sandlin III*, but the Court refused to consider it because
Sandlin raised it as an affirmative defense in his response to CitiMortgage's motion for summary
judgment.  2018 WL 2370769, at *3.  The Sixth Circuit affirmed that decision, explaining that "a
plaintiff may not expand his claims to assert new theories for the first time in response to a
summary judgment motion."  No. 18-5452, at 5 (quoting *Desparois v. Perrysburg Exempted Vill.
Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012)).

claim arises because "Defendant[]s have manufactured a default" (ECF No. 15, at 7) is simply not supported by any factual allegations in his Complaint. Because Sandlin has failed to plausibly state a claim for breach of contract, it is recommended that the claim be dismissed.

      F.    <u>TCPA Claim</u>

      Sandlin's claim under the TCPA, Count Five, is based on his assertions that Defendants misapplied his payments, misrepresented their justification for that misapplication, wrongfully assessed fees and penalties, improperly force placed insurance on his home, and held payments before returning them. (Compl. ¶ 77.) In *Sandlin III*, where Sandlin also made a TCPA claim, it was conclusively determined that "[f]oreclosure proceedings are not covered by the TCPA." 2016 WL 4276287, at *3. As the Court found, "because Sandlin's TCPA claim is based upon alleged deceptive conduct in the debt collection and foreclosure process, it fails as a matter of law." *Id.* This precise issue was raised and actually litigated in *Sandlin III*, and its determination was necessary to the judgment, and thus the current TCPA claim, also arising from foreclosure proceedings, is barred by issue preclusion.

      In addition, for the reasons articulated in *Sandlin III*, the TCPA claim in Count Five is substantively insufficient. "Foreclosure proceedings are . . . not covered by the TCPA." *Brown v. U.S. Bank Nat'l Ass'n*, No. 2:12-cv-03005-dkv, 2013 WL 12049109, at *6 (W.D. Tenn. Nov. 21, 2013) (citing *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 841–42 (Tenn. 1996)); *Peoples v. Bank of Am.*, No. 2:11-cv-02863-STA-cgc, 2012 WL 601777, at *9 (W.D. Tenn. Feb. 22, 2012) ("Courts applying Tennessee [law] have consistently held that the TCPA does not reach the manner in which a lender conducts foreclosure proceedings."); *see also Sandlin III*, 2016 WL 4276287, at *3. Even if the alleged conduct took place before Defendants initiated the most recent foreclosure proceedings, Sandlin still cannot recover under the TCPA. *See Pugh v.*

*Bank of Am.*, No. 2:13-cv-02020-SHM-cgc, 2013 WL 3349649, at *8 (W.D. Tenn. July 2,

2013)); *cf. King v. Bank of New York Mellon*, No. 2:15-cv-02432-STA-dkv, 2015 WL 7575024,

at *5 (W.D. Tenn. Oct. 13, 2015), *report and recommendation adopted*, No. 2:15-cv-02432-

STA-dkv, 2015 WL 7588252 (W.D. Tenn. Nov. 25, 2015) ("[L]enders' actions relating to

foreclosure and debt collection, even when pursuing loan modification, are not covered by the

TCPA."); *Knowles v. Chase Home Fin., LLC*, No. 1:11-cv-01051-JDB-egb, 2012 WL 13018539,

at *7 (W.D. Tenn. Aug. 2, 2012) (same).

      Furthermore, as Defendants point out, Sandlin brings his TCPA claim under its catchall

provision, which provides "that enforcement of this subdivision (b)(27) is vested exclusively in

the office of the attorney general and reporter."  Tenn. Code Ann. § 47-18-104(b)(27).  Count

Five therefore fails as a matter of law because the provision does not provide Sandlin with a

private right of action.  The TCPA claims should be dismissed.

      G.   <u>Wantonness</u>

      Relatedly, the bases for Sandlin's claims for wantonness in Count Seven include that

Defendants acted with "reckless indifference to the consequences of initiating this foreclosure,"

and "[CitiMortgage] and Cenlar wantonly processed payments and/or returned them and charged

improper fees."  (Compl. ¶¶ 87, 88.)  To the extent CitiMortgage's actions associated with the

first foreclosure are captured within this claim, they either were, or could have been, raised

previously.  However, Sandlin appears to be alleging that Cenlar engaged in actions independent

of the initial foreclosure as a basis for his wantonness claims.  To the extent that he has, those

actions would not have been able to have been raised in the previous litigation between the

parties, and thus are not subject to res judicata.

      Nevertheless, Sandlin's wantonness claims are dismissible under Rule 12(b)(6) for failure

to state a claim.  Defendants assert that wantonness is not a cause of action under Tennessee law,

but even if the Court construes Sandlin's claim as one for the related claim of gross negligence, it similarly fails.

Tennessee courts have explained that the concepts of negligence, gross negligence, wanton or willful conduct, and recklessness exist on a highly malleable continuum. *Conroy v. City of Dickson*, 49 S.W.3d 868, 873 (Tenn. Ct. App. 2001) (quoting C. Mutter, *Moving to Comparative Negligence in an Era of Tort Reform: Decisions for Tennessee*, 57 Tenn. L. Rev. 199, 211 (1990)). One commentor has explained that "'gross' negligence [is] a category traditionally viewed as less egregious than recklessness or so-called 'wanton' negligence." Mutter, *supra*, at 211. At the same time, "[i]t can be argued . . . that the Tennessee definition of gross negligence makes it less distinguishable from recklessness or willful or wanton conduct." *Id.* at 320 n.48.

Regardless of whether wantonness is characterized as synonymous with gross negligence or as requiring more egregious conduct, Defendants' actions as alleged in Sandlin's Complaint do not meet that threshold. "To prevail on a claim of gross negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then prove that the defendant acted 'with utter unconcern for the safety of others, or . . . with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.'" *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003) (quoting *Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998)); *Spearman v. Shelby Cnty. Bd. of Educ.*, No. W2019-02050-COA-R3-CV, 2021 WL 142170, at *11 (Tenn. Ct. App. Jan. 15, 2021) ("To successfully assert a gross negligence claim, the party must 'prove that the defendant has committed a negligent act . . . .'" (quoting *Thrasher v. Riverbend Stables*, No. M2007-01237-COA-R3-CV, 2008 WL 2165194, at *5 (Tenn. Ct. App. May 21, 2008))). Gross negligence "differs from ordinary negligence only in degree, not in

kind." *Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352, at *5 (Tenn. Ct.

App. Jan. 27, 2004) (citing W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 34, at 212

(5th ed. 1984)).

As explained above, Sandlin's Complaint fails to state a claim for negligence. The

failure to state a claim for negligence also warrants dismissal of his claim for wantonness,

whether that is characterized as gross negligence, as Defendants suggest, or something more

egregious.

H.    Slander of Title

The slander of title claim in Count Eight arises from the publishing of notice of an

allegedly "wrongful foreclosure action." (Compl. ¶¶ 93, 94.) Presumably, Sandlin is referring to

the more recent 2019 foreclosure notice, and thus res judicata does not apply to bar the claim.

However, Sandlin's slander of title claim fails to state a claim under Rule 12(b)(6). To

establish a successful claim for slander or libel of title in Tennessee, a plaintiff must prove that:

(1) he has an interest in the property; (2) the defendant published false statements about the title

to the property; (3) the defendant was acting maliciously; and (4) the false statements

proximately caused the plaintiff a pecuniary loss. *Nashboro Golf Course, LLC v. Townhomes of

Nashboro Vill., L.P.*, No. M2017-00226-COA-R3-CV, 2018 WL 4382073, at *3 (Tenn. Ct. App.

Sept. 14, 2018) (quoting *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999)).

Nothing in Sandlin's Complaint suggests that Defendants acted maliciously, i.e., that they

were "motivated by ill will, hatred, or personal spite." *Bailey v. Memphis Bonding Co., Inc.*, No.

2:18-cv-02115-SHM-tmp, 2019 WL 1300092, at *17 (W.D. Tenn. Mar. 21, 2019) (quoting

*Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (1992)). "Malice is a necessary ingredient of

the action and must be both alleged and proven." *Sharp v. Memphis Bonding Co., Inc.*, No. 2:18-

28

cv-02143-SHM-tmp, 2019 WL 1301993, at *17 (W.D. Tenn. Mar. 21, 2019) (quoting

*Waterhouse v. McPheeters*, 145 S.W.2d 766, 767 (Tenn. 1940)). "Although the complaint does

not necessarily have to allege malice expressly, it must at least allege 'sufficient facts to give rise

to a reasonable inference that the defendants acted maliciously.'" *Id.* (quoting *Ezell v. Graves*,

807 S.W.2d 700, 704 (Tenn. Ct. App. 1990)).

Sandlin alleges only that Defendants published false and misleading information with

knowledge that the statements were false or with a reckless disregard that they were false, and he

has pled no facts indicating malice on the part of Defendants. (Compl. ¶ 94.) His legal

conclusions are insufficient to state a claim for slander of title, and it is recommended the claim

be dismissed.

## I.    Intentional Infliction of Emotional Distress

Sandlin's intentional infliction of emotional distress ("IIED") claim is based on his

allegation that he has been consumed with Defendants' potential foreclosure of his property for

"the last five years"[11] along with the public humiliation that has accompanied the foreclosure and

the threat of eviction. (Compl. ¶¶ 103–05.) To state a claim for IIED in Tennessee, a plaintiff

must demonstrate that the defendants' conduct was: "1) intentional or reckless; 2) so outrageous

that it is not tolerated by civilized society; and 3) resulted in a serious mental injury to the

plaintiff." *F.H. v. Shelby Cnty. Sch.*, No. 2:12-cv-02312-JTF-cgc, 2016 WL 10637102, at *5

(W.D. Tenn. Dec. 30, 2016) (citing, e.g., *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205

(Tenn. 2012)). The threshold for demonstrating outrageous conduct in Tennessee is a high one,

---

[11] As discussed *supra* Section IV.A, any conduct forming the basis of Sandlin's claim that occurred before December 21, 2016, is barred by res judicata. The allegations of new tortious conduct since that date are not.

and the standard exacting.  *Lemon v. Williamson Cnty. Schs.*, – S.W.3d –, 2021 WL 57957, at

*13 (Tenn. Jan. 7, 2021).

Defendants correctly assert that Sandlin has failed to meet Tennessee's high standard for

outrageousness.  (MTD 28–29.)  The tort "does not extend to mere insults, indignities, threats,

annoyances, petty oppression or other trivialities."  *Lemon*, 2021 WL 57957, at *13 (quoting

*Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).  Courts interpreting Tennessee law have

concluded that the sort of foreclosure-related actions Sandlin alleges are not so outrageous as to

meet this high standard.  *See Wilson v. Regions Bank*, No. 3:14-cv-02344, 2015 WL 4276262, at

*4 (M.D. Tenn. July 14, 2015), *report and recommendation adopted*, No. 3:14-cv-02344, 2015

WL 4758078 (M.D. Tenn. Aug. 10, 2015) (finding the issuance of a notice of default does not

constitute outrageous behavior); *In re Jenkins*, 488 B.R. 601, 617 (Bankr. E.D. Tenn. 2013)

("[T]he court cannot conclude that the running of foreclosure notices which may have caused

embarrassment is such outrageous behavior, 'so extreme in degree, as to go beyond all bounds of

decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"

(quoting *Bain*, 936 S.W.2d at 623)).

The extensive run-around and accompanying public humiliation Sandlin alleges he has

endured at Defendants' hands is not the sort of ignominy that meets the high threshold required

of a Tennessee IIED claim.  Count Ten should be dismissed for failure to state a claim.

J.    Declaratory and Injunctive Relief

Because the Court recommends dismissal of the each of Sandlin's claims, and he has not

articulated an independent basis for declaratory judgment or injunctive relief, it also recommends

that Count One be dismissed pursuant to Rule 12(b)(6).  *See Brown v. U.S. Bank Nat'l Ass'n*, No.

2:12-cv-03005-dkv, 2013 WL 12049109, at *7 (W.D. Tenn. Nov. 21, 2013) (dismissing claims

for injunctive relief made pursuant to a motion for judgment on the pleadings when the

underlying causes of action failed to state a claim).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Defendants' Motion to Dismiss be

GRANTED in its entirety.

Respectfully submitted this 1st day of March, 2021.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation
disposition, a party may serve and file written objections to the proposed findings and
recommendations.  A party may respond to another party's objections within fourteen (14) days
after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within
fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.